25451. McDANIEL *v.* THE STATE.

Decided June 18, 1936.

*R. S. Foy*, for plaintiff in error.

*George R. Lilly, solicitor-general, E. J. Clower*, contra.

Guerry, J.  Will McDaniel was convicted of assault with intent to murder, upon A. Paulk, a police officer of the City of Thomasville, by shooting him with a shotgun.  The evidence discloses that Will McDaniel was living in a four-room house on Calhoun Street in Thomasville.  Two police officers, Braswell and Paulk, both of whom were dead at the time of the trial, went to his house; the evidence does not disclose for what purpose.  All of the testimony in reference to the shooting itself was furnished by a witness who happened to be passing about thirty steps away at the time it occurred.  He testified that he heard first what seemed to be a shotgun fired inside a house, and that he looked and saw Braswell standing shooting into a window of the house, and Paulk at the end of the porch to the house, on his knees, peeping around the corner.  Ten or eleven shots were fired, and there seemed to be a second gunshot from the inside of the house.  Most of the shooting was done by Braswell, and Paulk did not seem to have shot but once into the door of the house.  "The shooting quieted off in about a minute."  The witness ran up and went into the house with Braswell and into the room into which they had been shooting, and then in another room they found the defendant, and "he was leaning on the bed, kinder on the bed. . . There was a little blood on the floor. . . Will McDaniel was either drunk or paralyzed from bullets or something; he was not sane; you could look at him and tell he was in a stupor.  I could not say he was drunk. . . I do not know what had occurred at defendant's house before the shooting. . . I do not know whether

other parties were in the house before I went in. I went in only one room and the hall. . . I did not go into the other rooms at all. I did not see any party fire from inside the house. I· could not tell who fired the shot from inside, and could not tell whether any one left the house out of a window, or otherwise or from the front. I paid no attention, and could not have seen them if they had. I was not noticing that. . . The gun was between the hall and the room he was on the bed in. . . There was a board fastened from one post to the other on the back porch where Paulk was, about six inches wide. The whole load of shot had cut a hole through that board; the hole was about four and one half inches. This was on a direct line from the back door. I did not see anybody in the house or leaving the house, except Will McDaniel. He was the only one in the house apparently. . . I made no search in the house, except the room we went in." When they started out of the room Paulk walked in, and they found he had been shot in the face with a shotgun. "The defendant could not have shot either of the officers from the room we found him in. . . The party shooting him must necessarily have been in the hall." There was no evidence that the shotgun found in the hall had been fired, or that it was ever seen in the defendant's possession. A witness testified that another officer told him in the presence of the defendant, at the time they were carrying the defendant to the hospital, that "Will McDaniel shot Mr. Paulk, and the defendant did not deny it. I did not undertake to know whether he could understand what we were talking about. I did not think it was necessary. . . There was not anything to keep him from understanding, so far as the distance was concerned. . . In my opinion he was all right, except he was shot and maybe full of liquor. . . I do not know whether he was in possession of full faculties or not."

The foregoing evidence is all that in any way tends to connect the defendant with the offense with which he is charged; and we think it insufficient to support the conviction. Except for the fact that the defendant was in the house and had been shot, there is no evidence that he fired the shot that struck Paulk, or that he was the only person in the house who could have fired the shot. The evidence tending to show an implied admission on his part that he shot Paulk was not sufficient to have this effect, under the

circumstances detailed at the time he was accused of the crime. The defendant himself had been shot, and the witness testified that he seemed to be in a stupor, and he did not know whether he was in full possession of his faculties at the time. This evidence certainly could not be said to be sufficient to show any admission. The evidence failed to disclose for what purpose these officers were firing into the house of the defendant, and that if shooting was done by him it was not done in defense of person or habitation. There is no evidence that the men who were shooting into the house were engaged in a lawful purpose, or that the defendant, if he used the gun, was not justified. We are of the opinion that the court erred in overruling the motion for new trial.

*Judgment reversed. Broyles, C. J., concurs. MacIntyre, J., dissents.*